THIRD DISTRICT—APRIL, 1915.    457

Municipal Eng. & Con. Co. v. City of Farmer City, 193 Ill. App. 457.

# Municipal Engineering & Contracting Company et al., Appellees, v. City of Farmer City, Appellant.

1. MECHANICS' LIENS, § 79*—*when rental of sewer excavator subject of lien.* A lien cannot be acquired under section 23 of the Mechanic's Lien Act (J. & A. ¶ 7161), on funds due a contractor from a city for constructing a sewer, for the rental of and repairs to a sewer excavating and back filling machine used in the work.

2. MECHANICS' LIENS, § 79*—*when materialman entitled to lien for material used in making but not entering into public improvement.* A lien cannot be acquired under section 23 of the Mechanic's Lien Act (J. & A. ¶ 7161), on funds due a contractor from a city for constructing a sewer, for lumber furnished for shoveling and bracing the trenches, and used for tracks for an excavating machine, and for lumber and piping used in making but not entering into the improvement.

3. MECHANICS' LIENS, § 79*—*when lessor entitled to lien for rental of machinery used in making public improvement.* The lessor of an engine and pump used for the removal of water from a sewer trench during construction is not entitled to a lien under section 23 of the Mechanic's Lien Act (J. & A. ¶ 7161), for the rental of the machines and for oil and gasoline supplied for running them, on funds due from a city to a contractor.

4. MECHANICS' LIENS, § 79*—*when lien exists for materials used in making but not entering into public improvement.* No lien may be acquired under section 23 of the Mechanic's Lien Act (J. & A. ¶ 7161), on funds due from a city to a contractor, for tile used in conveying water from a sewer during construction, nor for pipes and fittings used to carry water from a tank to an engine and cement mixer.

5. MECHANICS' LIENS, § 79*—*when lien exists for repairing tools used in making public improvement.* No lien exists under section 23 of the Mechanic's Lien Act (J. & A. ¶ 7161), on funds due a contractor from a city, for repairs made on machinery and tools used in constructing a sewer.

6. MECHANICS' LIENS, § 5*—*when act strictly construed.* The Mechanic's Lien Act (J. & A. ¶¶ 7139 *et seq.*) must be strictly construed since it is in derogation of the common law.

7. MUNICIPAL CORPORATIONS, § 205*—*construction of local improvement act.* The Local Improvement Act must be strictly construed.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

8. MECHANICS' LIENS, § 79*—*when materialmen and subcontractors entitled to lien on money due contractor for public improvement.* No lien can be established under section 23 of the Mechanic's Lien Act (J. & A. ¶ 7161), by materialmen and subcontractors, on funds due a contractor from a city for a public improvement alleged to have been wrongfully paid him from money acquired by a general and special assessment, where the lienors do not prove that an assessment roll was filed and a judgment of confirmation rendered.

9. MECHANICS' LIENS, § 79*—*when subcontractor not entitled to for public improvement.* Subcontractors cannot acquire a lien under section 23 of the Mechanic's Lien Act (J. & A. ¶ 7161) on funds due from a city to a contractor for constructing a public improvement, where they failed to comply with a condition of the contract between the city and the contractor, requiring the assent of the board of local improvements to the subletting of any portion of the work.

Appeal from the Circuit Court of De Witt county; the Hon. W. G. COCHRAN, Judge, presiding. Heard in this court at the April term, 1914. Reversed and remanded with directions. Opinion filed April 16, 1915.

**Statement by the Court.** This is an appeal by the City of Farmer City to reverse the decree of the Circuit Court entered in favor of appellees in a suit to enforce liens on the money, bonds and warrants due or to become due Howes Brothers Company, a contractor, under section 23 of the Mechanic's Lien Act (J. & A. ¶ 7161).

On the third day of August, 1908, the City of Farmer City passed an ordinance under the Local Improvement Act providing for the construction of a sewer in said city, to be paid for partly by general taxation and partly by special assessment to be levied on the property to be benefited thereby. The section of the ordinance governing the mode of raising the money for the payment is as follows:

"Section 8. That the cost of the improvement herein provided for shall be paid for as follows: Eight thousand dollars ($8,000.00) shall be paid for by gen-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

eral taxation, and the balance, including the sum of twelve hundred and seven dollars ($1207.00) shall be applied toward the payment of the cost and expenses attending the making and return of the assessment roll, collecting of such assessments and other costs by law authorized, shall be paid by special assessment upon the property benefited, in accordance with said Act of the General Assembly and the amendments thereto.''

The contract for the improvement was let to Howes Brothers Company April 20th, 1909, for a consideration of $16,888.15, and contains the following provisions:

''CONDITIONS.

2. WITNESSETH: That the said party of the second part, for, and in consideration of the payments to be made by the said City of Farmer City as herein set forth, hereby covenants and agrees to furnish all tools, labor and material for the construction of a system of sewers in John street and other streets, avenues and public places in the City of Farmer City, Illinois, according to the ordinance, plans, profiles and specifications for said work on file in the office of the City Clerk of the City of Farmer City, Illinois; which said ordinance, plans, profiles and specifications are hereby made a part and portion of this contract.''

''SUB-CONTRACTORS.

11. This agreement shall not be assigned nor any part of the work sub-contracted without the written consent of the Board of Local Improvements indorsed thereon, and in no case shall such consent relieve the party of the second part from the obligations herein entered into by the said party, or change the terms of this agreement.''

''CITY PAY LABORS.

16. It is further agreed that all funds becoming due said contractor under this contract shall be and are subject to the provisions of section 23 of an act entitled, 'An act to revise the law in relation to mechanic's liens,' approved May 18, 1903, and in force July 1, 1903.''

The Municipal Engineering & Contracting Company filed its bill to foreclose a lien upon the money, bonds and warrants due or to become due the Howes Brothers Company from the city on account of the latter's contract with the city, under and by virtue of section 23 of the Mechanic's Lien Act (J. & A. ¶ 7161). Shortly thereafter, the Alexander Lumber Company filed a similar bill. These bills were consolidated and numerous other lienor claimants were made parties defendant thereto. Some of these filed answers to the original bills and also intervening petitions, others filed answers which, on order of the court, were allowed to stand also as intervening petitions. With the exception of the difference in the character of the claims, the consolidated bills and intervening petitions are substantially the same, and set forth the ordinance; the execution of the contract between the city and Howes Brothers Company for the furnishing of all tools, labor and material for the construction of the sewer provided by the ordinance; aver that Howes Brothers Company completed the sewer and that it was accepted by the city June 30, 1910; that written notices of the respective claims for liens were filed with the city clerk in compliance with section 23; that at the time of the service of the notices there were sufficient money, bonds and warrants due the contractor in the custody and control of the city officials to have paid all valid liens thereon.

The answers of the city to the original bills and to the intervening petitions are substantially the same, and admit the passage of the ordinance and the contract with Howes Brothers Company, but deny every other material allegation. Howes Brothers Company filed no answers and was defaulted.

The claim of the Municipal Engineering & Contracting Company is based upon the two written contracts made by them with Howes Brothers Company, for the rental of two machines used by the latter in construct-

ing the sewer. The first contract provided for the rental of a No. 3 Chicago sewer excavating machine for fifty-six days for the consideration of $2,500, and $35 per day for each day in excess of that number. The second provided for the rental of a back filler machine for the sum of $325. The net amount of the claim, after allowing credits for payments, amounted to $2,733.43, and this sum includes repairs made on the machines during the progress of the work to the amount of $655.91. The decree allows this claim, together with interest thereon, making the total amount allowed $3,151.66.

The decree allows a lien to the Alexander Lumber Company, including interest, in the sum of $2,590 for cement, labor and lumber. Much of the lumber was used for shoring the sides of the trench. Some of it was used to place under the wheels of the trenching machine as a track for the latter to run on, some of it was taken away by the lumber company and a portion of it was left in the trenches. What proportion of the lumber was so respectively disposed of is not shown by the evidence.

The decree allows a lien to S. G. Arbogast, including interest, in the sum of $1,179.65 for brick, cement, labor, tile, rent of a pump, gasoline, oil, etc.

The decree allows a lien to the White Hall Sewer Pipe & Stoneware Company, including interest, in the sum of $1,538.50, for sewer pipe which appears was actually used in the sewer, but the decree further provides in regard to this claim that said amount shall be paid by Howes Brothers Company to H. L. Williams within twenty days of the filing of the decree.

The decree allows liens to other claimants as follows: E. M. Burr & Company, $323.96; South Bend Foundry Company, $15.49; Jesse McMurphy, $18; F. R. Darlington Lumber Company, $74.44; F. H. Cox, $819.05; John Berry, $10.80; H. L. Williams, $82.54; Joseph C. Gould, $179.17; Chapman Valve Manufacturing Company, $115.85.

During the progress of the work from January 10, 1909, to November 4, 1909, the city issued to the contractor, Howes Brothers Company, eight orders, three of them were drawn on the "General Fund," three on a "Special Fund," and two on a "General—Special Fund." The total amount of these orders was $6,631.22. Eleven bonds, payable from the second instalment representing a total of $3,900, were also delivered to the contractor. The contractor failed to complete the work and the city hired the labor and finished the improvement at a cost of $3,903.03. This was done without advertising for bids or reletting the contract. It is contended by appellees that all of the above payments made by the city, and also the delivery of the bonds were illegal and void, and that in contemplation of law the city had the above funds in its possession at the time of the service of the notices of the claimants for liens.

No assessment roll or order of confirmation of the assessment roll was introduced in evidence. No tax levy ordinance providing for the $8,000 to be raised by general taxation was introduced, and no evidence to show that there was not such an ordinance.

HERRICK & HERRICK and H. M. STEELY, for appellant.

INGHAM & INGHAM, McMILLEN & McMILLEN, V. F. BROWNE and LEMON & LEMON, for appellees.

MR. PRESIDING JUSTICE ELDREDGE delivered the opinion of the court.

It is urged that no mechanic's lien can be enforced for any material, apparatus or fixtures that did not enter into and become a part of the improvement, and the argument of counsel for the appellant in support of this contention is particularly addressed to the claims of the Municipal Engineering & Contracting Company and Alexander Lumber Company. The lien of the

former is for rental for the two machines and the repairs on the same. They consisted of a sewer excavating machine and a back filler. The furnishing of material, apparatus or machinery to a contractor, which is not attached to or does not become a part of the improvement, cannot be made the basis for a mechanic's lien by a subcontractor under the laws of this state, and no lien should have been allowed for the rental of these machines nor for the repairs thereon. *R. Haas Elect. & Mfg. Co. v. Springfield Amusement Park Co.*, 236 Ill. 452. And it makes no difference whether such articles were bought or rented by the contractor. *McAuliffe v. Jorgenson*, 107 Wis. 132.

The lien of the Alexander Lumber Company, in so far as it is represented by lumber used in the shoring or bracing of the trench, for trackage for the trenching machine and the portion taken away by it, can not be sustained. *Rittenhouse & Embree Co. v. F. E. Brown & Co.*, 254 Ill. 549.

It follows also that the lien of S. G. Arbogast should not have been allowed for that part of his claim based upon the rental of an engine and pump for the pumping of water from the trench, the gasoline and oil used in the running of the engine and pump, the tile used for running the water off which did not become a part of the improvement, and the charges for hauling the tank and pump.

Likewise, it was error to allow the lien of H. L. Williams in so far as it was based upon his claim for pipe and fittings used in running the water from a tank to the engine, to the mixing boxes and to the concrete mixer.

So, also, no lien should have been allowed upon the claim of Joseph C. Gould for repairs upon the machines and tools.

For the same reason the allowance of a lien to E. M. Burr & Company for the pipe used in holding the sheeting and stringers in place which did not become a part of the improvement cannot be sustained.

In our opinion, however, none of the liens estab-
lished by the decree can be maintained for other rea-
sons. The act providing for mechanics' liens, being in
derogation of the common law, in this State receives
a strict construction. *Schmidt v. Anderson,* 253 Ill.
29; *Turnes v. Brenckle,* 249 Ill. 394. It has also been
held that a strict construction shall apply to the Local
Improvement Act in so far as determining the liability
of a city under the act is concerned. *City of Chicago
v. Brede,* 218 Ill. 528. It is claimed by appellees that
the money payments made to the contractor
out of the general, special and general-special
funds were illegally made and that the city
should be charged with having that amount of
money on hand. The amount so paid was
$6,631.32. The ordinance provided that the cost of the
sewer to the amount of $8,000 should be raised by gen-
eral taxation. Ample time had elapsed between the
passage of the ordinance and these payments to have
levied and collected this general tax. There is nothing
in the record to show that this was not done. If this
general tax had been collected and was in the treasury
of the city, and if these payments were made out of the
money procured by a general tax for such purpose,
then they were legally made. *First Nat. Bank of Du
Quoin v. Keith,* 183 Ill. 475. Under the pleadings in
this case the burden of proving the liability of the city
was upon appellees. Section 39 of the Local Improve-
ment Act (J. & A. ¶ 1429) makes it the duty of the offi-
cer making the assessment to estimate what propor-
tion of the total cost of the improvement would be of
benefit to the public, and section 41 (J. & A. ¶ 1431)
provides that the assessment roll shall show what
amount has been so assessed against the public and
against each tract of land, and the amount of each in-
stalment. No assessment roll was introduced in evi-
dence. . Counsel for appellees did make an offer to
introduce a portion of the assessment roll, stating

that the offer was limited to a description of the lots etc., name of the owner, total amount assessed, its division into five instalments with the affidavit of the officer preparing the same, file mark of the county court, the amount assessed as a whole and the amounts of the different instalments. This offer was objected to by appellant and the court made no ruling on the objection. Neither the assessment roll, nor even that part which was offered, appears in the record, and all the information that can be gathered from the offer, with the exception of the amounts of the five different instalments, is substantially what has been stated above. An assessment roll and the order of its confirmation are the basis of a special assessment under the Local Improvement Act, are jurisdictional, and without which no assessment proceedings can be maintained. *Morrison v. City of Chicago,* 142 Ill. 660. In order for appellees to sustain their bills and intervening petitions in the court below, it was essential for them to prove that an assessment roll had been filed and that a judgment of confirmation had been entered thereon. Such evidence was the foundation of their case, and upon its proof depended the competency of the other proof offered. The assessment roll not having been introduced in evidence, we have no means of knowing whether the cash payments made aforesaid were made out of the $8,000 to have been raised by general taxation, or out of any sum which might have been assessed as public benefits or otherwise. Without this proof there can be no competent evidence that any assessments were ever made by virtue of this ordinance, or that the city had any funds derived therefrom, and no lien under section 23 of the Mechanic's Lien Act (J. & A. ¶ 7161) can be established.

The rights of appellees to liens are subject to another fatal objection. They were sub-contractors under the statute, and like claimants have been so treated in all cases construing this section. *West Chicago*

*Park Com'rs v. Western Granite Co.,* 200 Ill. 527; *Haynes & Lyons v. County of Coles,* 234 Ill. 137; *Spalding Lumber Co. v. Brown,* 171 Ill. 487. The original contract made the ordinance a part thereof, and the rights of appellees as subcontractors are dependent upon the contract and are controlled by all the provisions therein. *Rittenhouse & Embree Co. v. Warren Const. Co.,* 264 Ill. 619. Section 11 of the contract provided that no part of the work could be subcontracted without the written consent of the board of local improvements indorsed thereon. Where the original contract provides that the improvement shall be delivered free from all liens, subcontractors can establish no liens thereon. *Rittenhouse & Embree Co. v. Warren Const. Co., supra.* By analogy, when a contract provides that the contractor shall perform all the work and furnish all the tools and material therefor, and that no part of the work shall be subcontracted without consent of a nominated party, such consent is a condition precedent to the establishment of a lien by a subcontractor. While in the present case no lien could have been established on the improvement itself, but only on the money, bonds or warrants due the contractor, yet the principle involved is the same. Although section 16 of the contract recognizes the right to liens under section 23 of the statute, yet the whole contract must be construed together, and section 11 having provided that no part of the work should be subcontracted without the written consent of the board of local improvements indorsed thereon, subcontractors acquired no right to liens unless they had first procured the written consent of said board to their contracts with the original contractor. *Benedict v. Danbury & N. R. R.,* 24 Conn. 320. None of the appellants had procured such consent.

For the reasons above stated, the decree must be reversed and the cause remanded with directions to dismiss the bills and intervening petitions for want of equity.

*Reversed and remanded with directions.*